**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CERTIFIED GROCERS OF CALIFOR-NIA, LTD., Respondent.**

No. 77–1624.

United States Court of Appeals,
Ninth Circuit.

Dec. 7, 1978.

Joseph P. Norelli (argued), Washington, D. C., for petitioner.

Paul Causey (argued), of McLaughlin & Irvin, Los Angeles, Cal., for respondent.

Before WALLACE and ANDERSON, Circuit Judges, and INGRAM,* District Judge.

* The Honorable William A. Ingram, United States District Judge, Northern District of California, sitting by designation.

J. BLAINE ANDERSON, Circuit Judge:

The National Labor Relations Board (the Board) has petitioned for enforcement of its Order against respondent Certified Grocers of California, Ltd., (the Company). The Board's Decision and Order, reported at 227 N.L.R.B. 1211 (1977), found that the Company violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1),[1] by requiring employee Eric Vaughan to meet with plant manager Bill Riddle without union representation when, because he reasonably feared he might be disciplined, Vaughan had requested the presence of a shop steward. The Board held this conduct violated the mandate of *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). We disagree and deny enforcement.

The parties waived an administrative hearing because the facts were undisputed. We summarize the facts based on the Board's uncontested findings.

Prior to the meeting, Riddle had recommended to his supervisor, Robert Walz, that Vaughan be given a disciplinary layoff for low production. Walz agreed, and his office issued a disciplinary notice on October 16, 1975. That same day Vaughan was summoned to Riddle's office. Vaughan reasonably feared that he would be disciplined by Riddle, and upon reporting, he requested that his shop steward be summoned. Riddle denied this request.

Riddle then told Vaughan that his work was unsatisfactory "and that he was issuing him a warning and disciplinary layoff notice." 227 N.L.R.B. at 1212. Vaughan again requested the presence of his shop steward; he also requested to see his performance records. Riddle denied both requests, signed the notice, and handed it to Vaughan. Vaughan said he did not know what the Company wanted from him. Riddle replied that getting the job done was the Company's sole concern and that Vaughan

1. The Board did not find, and does not argue on appeal, that the Company violated § 8(a)(5) of the Act by refusing to bargain with the union over imposition of discipline. The issue is therefore not before us.

should think it over during the layoff. Vaughan then left.

Based on the parties' stipulation, the Board made the following additional finding of fact:

"The purpose of the meeting on October 16, 1975, was to deliver the warning notice to Vaughan. The decision to issue the warning notice had been made by Walz, Riddle's supervisor, and Riddle had no authority to modify or withhold the issuance of the warning notice." *Id.*

Thus, the purpose of the meeting was not to elicit damaging facts from Vaughan to further support the decision to discipline. Nor was the purpose to hear Vaughan's side of the story with a view toward withholding the layoff notice.

In *Alfred M. Lewis, Inc. v. NLRB*, 587 F.2d 403 (9th Cir. 1978), this court held that *Weingarten* should not be read to require a right of representation when the interview is simply to inform the employee that he is being disciplined. At 411–412. The court said that the right does not arise unless one purpose of the interview is "to obtain facts to support disciplinary action that is probable or that is being seriously considered." *Id.* at 410. Because there was no interrogation in *Lewis*, the court reversed the Board.

Here, Riddle did not question Vaughan, but "simply informed [him] of the disciplinary action to be taken." *Id.* at 411. The decision to discipline was already final, and Riddle could not modify or withhold the notice. The Board argues that since Riddle did not sign the notice until the meeting was at end, "the disciplinary action herein was not taken 'without a prior discussion or consultation with the affected employee.'" (Reply Brief at 4). The Board also found sinister implications in the fact that the meeting occurred in Riddle's office.[2]

Both facts are insignificant because no "discussion or consultation" occurred or was

even contemplated. According to the Board's own findings, the purpose of the meeting was "to deliver the warning notice," not to investigate. *See Mt. Vernon Tanker Co. v. NLRB*, 549 F.2d 571 (9th Cir. 1977); *NLRB v. Columbia University*, 541 F.2d 922 (2d Cir. 1976). At the outset of the meeting, Riddle said he "was issuing" the warning. When Vaughan did try to discuss his work, Riddle refused to produce his performance records and explained that the Company only wanted the job done.

The petition for enforcement is DENIED.

---

2. Riddle's office was, of course, convenient and private. Any inference of illicit investigative purpose is contradicted by the fact that when

Vaughan invited discussion about his performance, Riddle refused.