RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0459p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PETER G. GRAIN, M.D., and ANNETTE
BARNES, M.D.,

                 *Plaintiffs-Appellants,*

      *v.*

TRINITY HEALTH, MERCY HEALTH SERVICES
INC., d/b/a Mercy Hospital, and MARY R.
TRIMMER,

                 *Defendants-Appellees.*

No. 08-1410

Appeal from the United States District Court

for the Eastern District of Michigan at Detroit.

No. 03-72486—Patrick J. Duggan, District Judge.

Submitted: December 12, 2008

Decided and Filed: December 24, 2008

Before: ROGERS, SUTTON and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Elmer L. Roller, LAW OFFICE OF ELMER L. ROLLER, Bloomfield Hills, Michigan, Gary P. Supanich, LAW OFFICE, Ann Arbor, Michigan, for Appellants. W. Mack Faison, Richard Joseph Seryak, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, Linda O. Goldberg, MILLER, CANFIELD, PADDOCK & STONE, Ann Arbor, Michigan, for Appellees.

1

———————————————

**OPINION**

———————————————

SUTTON, Circuit Judge.   Peter Grain and Annette Barnes challenge the district court's denial of their motion to confirm in part and modify in part a $1.6 million arbitration award.  We affirm.

I.

Grain and Barnes, husband and wife, are medical doctors who once worked for Mercy Hospital.  In 2003, they sued Mercy and the related defendants for taking a variety of "punitive actions" that allegedly interfered with their medical practices.  JA 41.  Grain complained that the defendants had violated 42 U.S.C. § 1981 by discriminating on the basis of race in contracting and by violating several state laws, while Barnes sought only state-law relief.  After the defendants moved to compel arbitration, the district court dismissed the state-law claims that were subject to a pre-existing arbitration agreement and stayed the remaining claims pending arbitration.

Grain and Barnes prevailed in the arbitration proceeding and won $1,641,870.44.  They then filed a motion in the district court, asking the court to confirm the merits of the arbitration decision and to increase the size of the award.  The district court confirmed the award but refused to increase it.  *Grain v. Trinity Health* (*Grain I*), No. 03-72486, 2008 WL 441060, at *3 (E.D. Mich. Feb. 14, 2008).  After a failed motion to reconsider, *see Grain v. Trinity Health* (*Grain II*), No. 03-72486, 2008 WL 1742718, at *3 (E.D. Mich. April 11, 2008), Grain and Barnes appealed.

II.

The parties agree that we have jurisdiction over this appeal.  But because the parties to a lawsuit cannot by consent create appellate jurisdiction that does not otherwise exist, we must determine for ourselves whether we have authority to resolve this appeal.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

The traditional ground for appellate jurisdiction—the final-judgment rule, 28 U.S.C. § 1291—does not give us authority to decide this appeal.  Although the district court has done everything that can be done with respect to the arbitration and although it dismissed the other claims subject to the arbitration agreement, it retains jurisdiction over, and indeed continues to consider, the non-arbitrable claims filed by Grain and Barnes.  Section 1291 generally does not permit piecemeal appeals but only permits an appeal once there is nothing left to do but enter the judgment and enforce it.  *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994).  Nor do the general exceptions to the final-judgment rule appear to apply here.  The district court did not enter a Rule-54(b) certification, which permits a court to "dispose[] of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action," *Brotherton v. Cleveland*, 173 F.3d 552, 559 (6th Cir. 1999) (emphasis omitted), and which at any rate may not apply to interlocutory arbitration decisions, *see Perera v. Siegel Trading Co*., 951 F.2d 780, 786 (7th Cir. 1992).  No party relies on § 1292(b) as a basis for jurisdiction.  And the collateral-order doctrine—which is frequently invoked but rarely invoked successfully, *see, e.g.*, *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)—does not apply because the propriety of the district court's confirmation order would not be "effectively unreviewable on appeal from a final judgment" after the remaining matters are resolved below.  *United States v. Parrett*, 530 F.3d 422, 427 (6th Cir. 2008).

All of these rules, however, deal with general grounds for declining to adhere to the final-judgment rule established by § 1291.  They do not preclude Congress from granting specific jurisdiction over appeals arising under certain federal laws, even appeals that do not resolve the rest of the claims pending in the district court.  *See Livesay*, 437 U.S. at 474; *Moglia v. P. Employees Ins.* Co., 547 F.3d 835, 837 (7th Cir. 2008); see *also In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983); *accord* 16 Wright, Miller & Cooper, *Fed. Prac. & Proc.* § 3926.2.  *See generally* Robert J. Martineau, *Defining Finality and Appealability by Court Rule:  Right Problem, Wrong Solution*, 54 U. Pitt. L. Rev. 717, 729–36 (1993) (collecting statutory exceptions to the final-judgment rule of § 1291).

One such grant of specific appellate jurisdiction appears in the Federal Arbitration Act.  *See Omni Tech Corp. v. MPC Solutions Sales, LLC*, 432 F.3d 797, 799 (7th Cir. 2005).  Congress has empowered the courts of appeals to entertain a variety of appeals from

interlocutory and final district-court arbitration decisions, including "[a]n appeal . . . from . . . an order . . . confirming . . . an award." 9 U.S.C. § 16(a)(1)(D). This appeal falls within this grant of appellate authority.

Grain and Barnes filed this action under the Federal Arbitration Act, seeking to confirm the arbitrators' decision in part (by upholding their liability ruling) and seeking to modify the arbitrators' decision in part (by increasing the award from $1.6 million to roughly $3.2 million). Although the Act permits a district court to grant both forms of relief, 9 U.S.C. §§ 9, 10, the court in this instance granted just one of them: It granted the couple's request to confirm the liability ruling but denied their request to modify the damages award. All of this resulted in a district-court order "confirming . . . an award," which is precisely what § 16(a)(1)(D) permits a disappointed party, even a *partly* disappointed party, to appeal. Nothing about this provision of the Act, or anything else in the Act, indicates that a party to a district-court proceeding under the Act must challenge all of a district court's confirmation decision, as opposed to just some of it, in order to file an appeal. The Act, it is true, directly authorizes appeals from district-court orders that "modify[]" arbitration awards, 9 U.S.C. § 16(a)(1)(E), and yet does not directly say that an unsuccessful party may appeal an "unmodified" award or a "denied modification request." But this is of no moment because an "unmodified" award frequently will become a "confirm[ed]" award, as indeed happened here. Jurisdiction exists to review the district court's decision.

### III.

In attempting to vacate or modify an arbitration award governed by the Federal Arbitration Act, a disappointed party must look to sections 10 and 11 of Title 9, which "provide [the] exclusive regime[] for the review provided by the [Federal Arbitration Act]." *Hall St. Assocs. v. Mattel, Inc.*, __ U.S. __, 128 S. Ct. 1396, 1406 (2008). Section 10 enumerates several grounds for vacating an award, while section 11 does the same for modifying an award. As the arbitration winners, Grain and Barnes, unsurprisingly, do not seek to vacate the award under § 10. They instead wish to modify the award—in truth, to double it—and thus rely on § 11, which provides the following grounds for modifying an arbitration award:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

A.

Grain and Barnes claim that the award must be modified because there was "an evident material miscalculation of figures." 9 U.S.C. § 11(a). But because they failed to raise this argument in the district court, they have forfeited the argument on appeal. *See Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 261 (6th Cir. 1996). The argument, at any rate, has nothing to recommend it. By its terms, "an evident . . . miscalculation of figures" concerns a computational error in determining the total amount of an award—what the Fourth Circuit calls a "mathematical error appear[ing] on the face of the award." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998); *see also Capital Wholesale Elec., Inc. v. McCarthy Constr.*, No. 93-16578, 1995 WL 105987, at *2 (9th Cir. Mar. 9, 1995) (requiring an "evident *mathematical* miscalculation") (emphasis added); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994) (finding a material miscalculation when an arbitrator mistakenly awarded the same damages twice in the same award). No such error appears on the face of the award, and Grain and Barnes have not pointed to any such error. Instead of complaining that the arbitrators made an obvious numerical gaffe in computing the total award, Grain and Barnes argue that the arbitrators made a mistake on the merits when they refereed a dispute between the parties over the appropriate start and stop dates for calculating the interest award. Whatever else such an alleged error may be, it is not "an evident material miscalculation of figures."

B.

Grain and Barnes face a similar problem in contending that the award was "imperfect in matter of form not affecting the merits of the controversy," 9 U.S.C. § 11(c), on the theory that it did not include a sufficient amount of attorneys' fees. Here, too, we have a complaint about a merits dispute, and here, too, we have a provision that deals with a process-driven problem. An award that is "imperfect in matter of form," as these terms suggest, is one that suffers from a scrivener's error or that otherwise does not deliver on the arbitrator's stated purpose in granting relief. *See Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1284 (5th Cir. 1994); *see also Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (describing the type of errors affected by this subsection as "technical error[s]"); *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980) (holding that district court had no power to revise arbitration award amount for violating public policy because "Section 11(c) . . . does not license the district court to substitute its judgment for that of the arbitrators"); *cf. Nationwide Mut. Ins. Co. v. First State Ins. Co.*, 213 F. Supp. 2d 10, 15 (D. Mass. 2002) (modifying an award when the arbitrators' written decision did not reflect the award they orally announced due to a "simple mistake" in the completion of a form).

Grain and Barnes cite no case—and we can locate none—in which the outcome of an arbitrator's reasoned decision regarding the appropriate amount of an attorneys' fees award is viewed as a "matter of form." The one case on which they rely in this portion of their argument cuts against them. It held that an award of attorneys' fees was "*not* imperfect in matter of form with respect to the adjudication of attorney's fees [because] [t]he issue of attorney's fees was presented to the arbitrator, and he made a clear determination of the parties' rights to attorney's fees under [the arbitration agreement]." *Mantaline Corp. v. PPG Indus., Inc.*, No. 2:02CV269, 2006 WL 297263, at *5 (W.D. Pa. Feb. 7, 2006) (emphasis added) (internal quotation marks omitted). Exactly. Because Grain and Barnes have not shown that this aspect of the award was inconsistent with the arbitrators' merits ruling on attorneys' fees, § 11(c) provides no basis for relief.

C.

Grain and Barnes principally argue that their award should be doubled, not because it implicates one of the enumerated grounds for modifying an award, but because it turned on a "manifest disregard of the law."  This theory, however, appears nowhere in § 11, and the Supreme Court has recently explained that the enumerated grounds in §§ 10 and 11 provide the "exclusive" grounds for obtaining relief from an arbitration decision.  *Hall St.*, 128 S. Ct. at 1406.  To the extent that "manifest disregard" is "shorthand" for the grounds enumerated in § 11, as the Supreme Court suggested might be the case for some of the grounds listed in § 10, *id.* at 1404, that does Grain and Barnes no good.  As we have shown, the enumerated grounds upon which they rely simply do not apply to their merits-based complaints about the award.

It is true that we have said that "manifest disregard of the law" may supply a basis for *vacating* an award, at times suggesting that such review is a "judicially created" supplement to the enumerated forms of FAA relief.  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).  *Hall Street*'s reference to the "exclusive" statutory grounds for obtaining relief casts some doubt on the continuing vitality of that theory.  But, either way, we have used the "manifest disregard" standard only to vacate arbitration awards, not to modify them.  As we held in *NCR Corp. v. Sac-Co*, *Inc.*, "[a] court's power to *modify* an arbitration award is confined to the grounds specified in [FAA] § 11," 43 F.3d 1076, 1080 (6th Cir. 1995), which do not include "manifest disregard of law." *See* Thomas H. Oehmke, *Commercial Arbitration* § 132:1 (2008); *cf. Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509–11 (2001) (noting that, in the labor-arbitration context, neither procedural misconduct nor irrational findings by an arbitrator will justify a court's reformation of the arbitration of the award because the appropriate remedy in both situations is to remand the case for further arbitration).

Grain and Barnes claim that we have repudiated the holding of *NCR*, but that is an overstatement.  The two cited cases deal only with a court's power to vacate awards based on the "manifest disregard" standard, and neither one contains even a kernel of dicta supporting this theory.  *See Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000); *Jaros*, 70 F.3d at 421.  Other cases, it is true, do contain dicta suggesting that a reviewing court may

vacate *or modify* an arbitration award based on manifest disregard. But nothing turned on these casual remarks. In two cases, we noted in passing that an award may be modified based on manifest disregard, despite the fact that the parties were seeking only vacatur, not modification. *See Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 686, 691 (6th Cir. 2007); *Buchignani v. Vining-Sparks IBG*, No. 98-6692, 2000 WL 263344, at *1–2 (6th Cir. 2000). Another case made a similar comment, without indicating that modification had been sought below and without concluding that modification was warranted. *See Legair v. Circuit City Stores, Inc.*, 213 F. App'x 436, 439 (6th Cir. 2007). By contrast, the vast majority of our decisions applying the manifest-disregard standard do so only to determine whether vacatur is an appropriate remedy. *See, e.g.*, *Coffee Beanery, Ltd. v. WW, L.L.C.*, No. 07-1830, 2008 WL 4899478, at *3 (6th Cir. Nov. 14, 2008); *Donelson*, 473 F.3d at 686, 691; *Jaros*, 70 F.3d at 421; *Anaconda Co. v. Dist. Lodge No. 27, Int'l Ass'n of Machinists*, 693 F.2d 35, 37–38 (6th Cir. 1982). *NCR* remains the law of this circuit and prohibits modifying an award based on an alleged "manifest disregard" of law.

IV.

For these reasons, we affirm.